**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| NATURAL RESOURCES DEFENSE COUNCIL; et al., | No.    19-35006 |
| Plaintiffs-Appellants, | D.C. No. 3:18-cv-00031-SLG |
| v. | |
| DAVID BERNHARDT, in his official capacity as Acting Secretary of the Interior; et al., | MEMORANDUM[*] |
| Defendants-Appellees, | |
| CONOCOPHILLIPS ALASKA, INC., | |
| Intervenor-Defendant-Appellee. | |

Appeal from the United States District Court
for the District of Alaska
Sharon L. Gleason, District Judge, Presiding

Argued and Submitted February 7, 2020
Seattle, Washington

Before:  M. SMITH and N.R. SMITH, Circuit Judges, and TUNHEIM,[**] District Judge.

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**]      The Honorable John R. Tunheim, United States Chief District Judge for the District of Minnesota, sitting by designation.

Natural Resources Defense Council and other environmental organizations (Plaintiffs) appeal the district court's grant of summary judgment in favor of the Bureau of Land Management (BLM) and related Federal Defendants, as well as Intervenor-Defendant ConocoPhillips Alaska, Inc. (collectively, Defendants). Plaintiffs had claimed that BLM failed to comply with the National Environmental Policy Act (NEPA), 42 U.S.C. § 4332, for its 2016 and 2017 oil and gas lease sales in the National Petroleum Reserve-Alaska (the Reserve). Plaintiffs allege that BLM failed to take a "hard look" at the potential greenhouse gas emissions that would result from the sales and failed to develop or analyze alternative lease sale configurations. *See Baltimore Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 97 (1983). The district court found Plaintiffs' claims time barred by the Naval Petroleum Reserves Production Act (NPRPA), 42 U.S.C. § 6506a(n)(1). We have jurisdiction pursuant to 28 U.S.C. § 1291, and we affirm.

We review the district court's summary judgment decision de novo. *N. Alaska Envtl. Ctr. v. Kempthorne*, 457 F.3d 969, 975 (9th Cir. 2006). Because the parties are familiar with the facts, we do not recount them here. This case arises from the same facts as our decision in *Northern Alaska Environmental Center v. U.S. Department of the Interior* (*NAEC*), No. 19-35008, which we also file today. Our resolution of the issues in *NAEC* resolves most of the issues here as well.

1.      We reject Plaintiffs' theory that BLM did not conduct any NEPA

2

analysis of the lease sales at all. For the reasons discussed in *NAEC*, we conclude that BLM's 2012 Environmental Impact Statement (EIS), prepared in combination with its Integrated Activity Plan (IAP) governing management of all BLM-managed lands in the Reserve, *was* the EIS for future lease sales. *See* Slip Op. at 32–36.

Defendants argue that the similarity between Plaintiffs' comments on the draft 2012 EIS and their present complaint belies their argument that the 2012 EIS did not cover future lease sales. We agree that this similarity may undermine Plaintiffs' theory inasmuch as it suggests that Plaintiffs understood the 2012 EIS to cover future lease sales but simply thought it did so inadequately. However, we do not find Plaintiffs' 2012 comments entirely dispositive of the matter, because we see no reason in principle why Plaintiffs could not allege the same defect in different NEPA analyses for different actions. *See, e.g.*, *Kern v. BLM*, 284 F.3d 1062, 1067, 1072–73, 1077–78 (9th Cir. 2002) (holding that EIS for Coos Bay regional management plan and subsequent tiered Environmental Assessment for proposed timber sales were both inadequate due to their failure to consider impacts on the Port Orford Cedar and a particular root fungus to which the Cedar is susceptible). Put another way, it is not the alleged *deficiency* that determines whether Plaintiffs' complaint necessarily challenges a previous EIS. Rather, we look to the *action* for which Plaintiffs allege deficient NEPA compliance, and

3

whether the previous EIS included that action within its defined scope. *See NAEC*, Slip Op. at 29–32.

We reject Plaintiffs' argument that the 2012 EIS could not have been the NEPA analysis for the 2016 and 2017 lease sales because it did not assess the climate-change impacts of the 2016 and 2017 lease sales. As with the *NAEC* plaintiffs' arguments regarding the alleged failure of the 2012 EIS to analyze site-specific impacts, *see* Slip Op. at 16–23, we are not persuaded that BLM's discussion of climate-change impacts differed so substantially (if at all) from what NEPA required for individual lease sales as to preclude the conclusion that the lease sales were within the scope of actions considered in the 2012 EIS.

Plaintiffs also argue that the 2012 EIS could not have been the NEPA analysis for the 2016 and 2017 lease sales because it did not assess alternatives for the 2016 and 2017 lease sales. We rejected this same argument in *NAEC*, finding it a criticism better directed at adequacy than scope. *See* Slip Op. at 34–35 (citing *Mayo v. Reynolds*, 875 F.3d 11, 20–22 (D.C. Cir. 2017)).

More fundamentally, Plaintiffs argue that the 2012 EIS could not have been the NEPA analysis for the 2016 and 2017 lease sales because it was prepared for the management plan stage of oil and gas development, as opposed to the lease sale stage. We reject this argument for the same reasons we rejected the *NAEC* plaintiffs' argument that a programmatic EIS necessarily cannot be a site-specific

4

EIS. *See* Slip Op. at 18–20 (concluding that nothing in NEPA precludes an agency from conducting both levels of analysis in the same document, however styled). Nor do BLM's NPRPA regulations requiring it to "complet[e] . . . the required [NEPA] environmental analysis" before "select[ing] tracts to be offered for sale," 43 C.F.R. § 3131.2(b), necessarily require a *new* NEPA analysis at the lease sale stage, distinct from that prepared at the management plan stage.

2.      Because the 2012 EIS *was* the EIS for future lease sales, BLM's "hard look" responsibility under NEPA was to take a hard look at environmental consequences and reasonable alternatives *in the 2012 EIS*. *See* 40 C.F.R. § 1502.1; *Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989). To the extent that Plaintiffs' hard look claims address information or circumstances knowable at the time of the 2012 EIS, they are therefore time barred by the NPRPA statute of limitations. *See* 42 U.S.C. § 6506a(n)(1) (barring "judicial review of the adequacy of" an EIS concerning oil and gas leasing in the Reserve outside of a 60-day window); *Turtle Island Restoration Network v. U.S. Dep't of Commerce*, 438 F.3d 937, 944–45 (9th Cir. 2006) (quoting *Cal. Save Our Streams Council, Inc. v. Yeutter*, 887 F.2d 908, 911 (9th Cir. 1989)) (plaintiffs cannot, "through careful pleading," avoid an otherwise applicable statute of limitations). Although we need not resolve exactly which aspects of Plaintiffs' complaint are so barred, we observe that, to the extent Plaintiffs' comments on the draft 2012 EIS

5

made the same arguments as Plaintiffs' present complaint, it is likely that the relevant information and circumstances were as knowable then as they are now.

We reject Plaintiffs' arguments that our application of the NPRPA statute of limitations effectively forecloses judicial review of lease sale NEPA compliance because Plaintiff's present challenge would not have been ripe during the 60-day window. To the contrary, a NEPA challenge to an EIS is ripe when the allegedly inadequate EIS is promulgated. *Kern*, 284 F.3d at 1070–71. Plaintiffs need not wait to challenge a specific project, because their asserted injury is procedural. *Id.*; *cf. Salmon River Concerned Citizens v. Robertson*, 32 F.3d 1346, 1355 (9th Cir. 1994) (holding that plaintiffs had standing to challenge an EIS for a regionwide vegetation management policy governing the use of herbicides, even where no site-specific decision to use herbicides had yet been made). Because future lease sales were within the defined scope of the 2012 EIS, *see NAEC*, Slip Op. at 32–36, Plaintiffs could have challenged the adequacy of the 2012 EIS for future lease sales within the 60-day window.

Our conclusion does not inoculate from judicial review any federal action for which the agency invokes a previous EIS. As we explain in *NAEC*, a subsequent federal action is protected by the statute of limitations only if the previous EIS gave fair notice that its scope included the subsequent action. *See* Slip Op. at 29–32. Furthermore, Defendants concede that the statute of limitations

6

would not bar a supplementation challenge based on significant new information or changed circumstances.

3. Having completed the 2012 EIS, BLM's only remaining hard look obligation with respect to subsequent lease sales was to evaluate whether new information or circumstances necessitated supplementation. *See* 40 C.F.R. § 1502.9(c). To the extent Plaintiffs' hard look claims address new information or circumstances, then, they have waived these claims by failing to preserve a supplementation challenge.

We disagree with Intervenor's argument that, because Plaintiffs' failed to appeal the district court's alternative holding that they waived supplementation, we should summarily affirm without reaching the merits. *See, e.g.*, *Rivera v. Ariz. Attorney Gen.*, 468 F. App'x 807, 808 (9th Cir. 2012). Plaintiffs sufficiently attack the logic underlying the relevance of supplementation. Had we agreed with Plaintiffs that the 2012 EIS was *not* an EIS for the 2016 and 2017 lease sales, Plaintiffs' waiver of a supplementation claim would not have been a sufficient basis on which to support the judgment. Rather, the proper inquiry would have been whether BLM was required to prepare a tiered EA or EIS. *See NAEC*, Slip Op. at 34.

4. Because we conclude that Plaintiffs' claims are time barred in part by the NPRPA statute of limitations and waived in the remainder, we decline to

address Intervenor's argument that the Mineral Leasing Act statute of limitations,

30 U.S.C. § 226-2, also bars Plaintiffs' challenge to the 2016 lease sale.

**AFFIRMED.**